```
                 IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    Plaintiff,
          vs.                              Case No. 06-40059-02-RDR

ORLANDO FLORES,

                    Defendant.
```

## MEMORANDUM AND ORDER

The court has conducted a hearing on the pretrial motions filed by the defendant. Having carefully considered the arguments of the parties, the court is now prepared to rule.

The defendant is charged in a two-count indictment. In Count 1, he is charged with conspiracy to distribute, and possess with intent to distribute, less than 50 kilograms of marijuana in violation of 21 U.S.C. § 846. In Count 2, he is charged with possession with intent to distribute 49 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). The charges arise out of a traffic stop in Coffey County, Kansas on February 8, 2006.

The defendant has filed three pretrial motions: (1) motion for discovery; (2) motion for discovery; and (3) motion to suppress evidence.

MOTION FOR DISCOVERY

The defendant seeks the following: (1) all information, reports or documents produced as the result of the fingerprint analysis in this case; and (2) a written summary of the

government's fingerprint expert's report.

The government has responded that it has no objection to providing a copy of the fingerprint report and Fed.R.Crim.P. 16 information relating to the examiner as soon as those materials are developed. With this response, the court shall deny the defendant's motion as moot. The government understands its obligation to produce the report when such a report is completed.

MOTION FOR DISCOVERY

The defendant seeks the following: (1) a copy of the Osage County Dispatch log for the traffic stop in this case; and (2) a copy of the Osage County Dispatch audio recording for the traffic stop in this case.

In it's response, the government indicated that it has no objection to producing either of the requested matters if they still exist. At the hearing, the government stated that these materials do not presently exist because of system changes in Osage County. With this response, the court shall also deny this motion as moot. Since the materials do not exist, the government cannot be expected to produce them.

MOTION TO SUPPRESS EVIDENCE

The defendant seeks to suppress the evidence that was seized following the traffic stop on February 8, 2006. The defendant argues there was no probable cause or reasonable suspicion to initiate a traffic stop. He contends that the observations made by

law enforcement were insufficient to create reasonable suspicion of criminal activity and thus justify the stop.

At the hearing, the court heard evidence and argument on this motion. Based upon that evidence and argument, the court now issues the following findings of fact and conclusions of law.

*Findings of Fact*

1. Wallace Long, an Osage County Sheriff's Deputy, established a "ruse" drug check lane on Interstate 35 on February 8, 2006. A "ruse" drug check lane is not an actual check lane. Signs are posted on the highway indicating that a drug check lane is ahead. The signs are situated so that a person traveling in a car carrying drugs will make a snap decision and take the exit preceding the drug check lane in order to avoid the drug check lane.

2. Deputy Long is an experienced law enforcement officer. He has been engaged in drug interdiction since 1997.

3. Deputy Long had set up two signs on the northbound lanes of I-35 just prior to the exit 160. The signs indicated that a drug check lane and a drug detection dog were just ahead. The exit sign indicated that it went to "Melvern." There was no indication of any services on the exit sign. Deputy Long was in a position to see who left I-35 and took the exit.

4. At approximately 2:30 a.m., Deputy Long noticed a blue Chevrolet Blazer leave I-35 at the Melvern exit. The exit is an

uphill exit, rather than the traditional downhill exit. He noticed that the vehicle put its blinker on prior to the exit. Deputy Long thought the vehicle traveled faster than normal up the exit to the stop sign at the top of the hill. He believed this was suspicious activity because he thought it indicated a decision that was not planned by the driver of the vehicle. He saw the vehicle come to a complete stop at the stop sign at the end of the exit ramp. He then observed the vehicle turn right and proceed slowly. He thought the vehicle was traveling slower than he would expect on the paved two lane road. He also found this conduct unusual. He believed that the slow travel, particularly after the fast approach to the stop sign, showed unfamiliarity with the surroundings or the route of travel. The vehicle was only traveling at between 30 to 35 miles per hour.

5. At the intersection where the Chevrolet Blazer turned right, there is a sign that indicates that Melvern is to the left. There is no indication of what is to the right or south. The road that the vehicle chose eventually leads to old highway 50. The area around the exit is rural in nature. There are a few farmhouses and fields. Deputy Long is familiar with the houses in the area. He is also familiar with most of the occupants and their vehicles. He did not recognize the Chevrolet Blazer as a familiar vehicle for the area.

6. Deputy Long followed the vehicle for approximately two

miles.  During the initial stages, he radioed his dispatcher and asked for information on the Chevrolet Blazer's Missouri license tag.  He was told that the tag was "not on file."  Deputy Long testified that "not on file" meant in 20 to 30 per cent of his cases that some illegal activity was taking place concerning the license tag.  This activity usually involved bogus plates.  He noted that in 70 to 80 per cent of the cases the explanation was innocent.  The "not on file" designation indicated that the state had not properly filed the licence plate number or that the vehicle had recently been purchased and the number had not been placed in the state's system.

    7.  The court found Deputy Long's testimony on his request for information on the license plate credible.  The defendant, based upon information his counsel received from the government during discovery, argued that Deputy Long had not learned that his license plate was "not on file" on the night of the stop.  Rather, the defendant contended that either Deputy Long's memory was inaccurate or that he purposely added this fact after the stop.  The defendant pointed out that the initial dispatch sheet he received failed to mention any request by Deputy Long on the license plate.  Another document seemed to indicate that Deputy Long had sought information on the license plate, but the Missouri system was "unavailable" prior to the stop.  Deputy Long testified that he specifically remembered the request and the response prior to the stop.  The

court found this testimony persuasive.

8. Deputy Long decided to stop the Chevrolet Blazer based upon suspicion of criminal activity. He believed that the vehicle had exited I-35 to avoid the drug check lane because it was carrying illegal narcotics. He suggested that the following circumstances provided reasonable suspicion: (1) the exit by the Blazer just after the drug check lane signs; (2) the greater than usual speed of the Blazer as it proceeded to the end of the exit; (3) the slower than normal speed of the Blazer as it proceeded south from the end of the exit; and (4) the fact that the Blazer's license plate was designated as "not on file" by his dispatcher. Deputy Long acknowledged that the driver of the Blazer broke no traffic laws during any time that he observed the vehicle.

9. Deputy Long turned on his emergency lights and the Chevrolet Blazer eventually pulled to the side of the road. Deputy Long approached the driver's window. After the driver rolled down his window, Deputy Long smelled an overwhelming odor of raw marijuana. Deputy Long had previously smelled raw marijuana and he was familiar with its distinctive odor. He had the driver step out and he immediately placed handcuffs on him. The driver was subsequently identified as the defendant, Orlando Flores. He also had the passenger step out of the vehicle. He also placed him into handcuffs.

*Conclusions of Law*

1.  Traffic stops are seizures within the meaning of the Fourth Amendment analogous to investigative detentions. See <u>United States v. Bradford</u>, 423 F.3d 1149, 1156 (10th Cir. 2005). The principles governing investigative detentions outlined in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), govern the lawfulness of traffic stops. See <u>United States v. Holt</u>, 264 F.3d 1215, 1228 (10th Cir. 2001). Under <u>Terry</u>, an investigative detention is proper when the detaining officer has a reasonable suspicion that criminal activity may be afoot. See <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002).

2.  The burden rests with the government to prove the reasonableness of the officer's suspicion. <u>United States v. Salzano</u>, 158 F.3d 1107, 1111 (10th Cir. 1998). "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity." <u>United States v. Hunnicutt</u>, 135 F.3d 1345, 1349 (10th Cir. 1998). "The law does not specify a minimum of factors necessary to constitute reasonable suspicion." <u>United States v. Gutierrez-Daniez</u>, 131 F.3d 939, 942 (10th Cir. 1997) (citation omitted), <u>cert. denied</u>, 523 U.S. 1035 (1998). Arriving at reasonable suspicion is a process dealing with probabilities, not hard certainties, "'as understood by those versed in the field of law enforcement.'" <u>United States v. Gutierrez-Daniez</u>, 131 F.3d at 942 (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 418 (1981)). Instead of closing their eyes to

suspicious circumstances, officers may call on their own experience and training to judge facts and even "perceive meaning in actions that appear innocuous to the untrained observer." United States v. Gutierrez-Daniez, 131 F.3d at 942 (citation omitted).  On the other hand, "[i]nchoate suspicions and unparticularized hunches . . . do not provide reasonable suspicion." United States v. Salzano, 158 F.3d at 1111 (quotation omitted).  "While the necessary level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, the Fourth Amendment requires some minimal level of objective justification." United States v. Gutierrez-Daniez, 131 F.3d at 942 (quotation omitted).

    3.  The court "judge[s] the officer's conduct in light of common sense and ordinary human experience." United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997) (citation omitted). "This approach is intended to avoid unrealistic second-guessing of police officers' decisions and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Gutierrez-Daniez, 131 F.3d at 941 (quotation omitted).  Rather than pigeonholing each fact as either innocuous or suspicious, we look at the totality of the circumstances in determining whether reasonable suspicion justified a longer detention. United States v. Mendez, 118 F.3d at 1431.

    4.  The court concludes in this case there was sufficient

8

evidence at the time of the stop to reasonably suspect the defendant of engaging in criminal activity.  In support of this finding, we note the following circumstances:  (1) the use of exit 160 on I-35 at approximately 2:30 a.m. by a vehicle when signs on the highway just preceding the exit indicated a drug check lane ahead and exit 160 showed no signs of any services; (2) the speed of the vehicle as it exited I-35 indicating an impulsive decision; (3) the speed of the vehicle as it turned south at the end of the exit indicating a lack of knowledge of the area; (4) the unfamiliarity of the vehicle to Deputy Long, who was very familiar with the local farmhouses and the vehicles that usually frequented them; and (5) the knowledge gained by Deputy Long prior to the stop that the license plate of Blazer was "not on file."  Although each of these factors viewed in isolation may not raise a reasonable suspicion of criminal activity, and although each could be consistent with innocent activity, in the aggregate we conclude that they meet the requisite standard.  See, e.g., United States v. Lambert, 351 F.Supp.2d 1154, 1160-61 (D.Kan. 2004)(highway patrol trooper had reasonable suspicion for investigatory detention of defendant where it was reasonable to infer that defendant took highway exit to avoid what he believed was drug check lane ahead). As stated by the Tenth Circuit in United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994):

> [A]n officer's specific articulable facts, when viewed in isolation, will often comport with general notions of

innocent travel rather than criminal activity. . . . Our task, however, is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious. Rather, the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed together through the lens of a reasonable law enforcement officer, justified a brief roadside detention. . . .

5.  In sum, the court finds that the stop of the defendant's car was proper.  Once Deputy Long smelled the odor of raw marijuana emanating from the vehicle, he had probable cause to search it. United States v. Zabala, 346 F.3d 1255, 1259 (10th Cir. 2003); United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991). Accordingly, the defendant's motion to suppress must be denied.

**IT IS THEREFORE ORDERED** that the following motions filed by the defendant are hereby denied as moot:  motion for discovery (Doc. # 12) and motion for discovery (Doc. # 18).

**IT IS FURTHER ORDERED** that defendant's motion to suppress evidence (Doc. # 32) be hereby denied.

**IT IS SO ORDERED.**

Dated this 8th day of August, 2006 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge